■ BETTY DONCHEY, as Administratrix of the Estate of SAMUEL DONCHEY, Deceased, Respondent-Appellant, v. JOHN DINGER, Doing Business as ATLANTIC WELDING CO., et al., Appellants, and RELIANCE STUDIOS, INC., Respondent.— In an action to recover damages for wrongful death, three defendants, John Dinger, National Oil Burner Co. of New York, Inc., and Triboro Combustion Corp., appeal from so much of a judgment of the Supreme Court, Kings County, entered May 7, 1959, on a jury's verdict of $135,400, as is in favor of plaintiff and against said three defendants, and as dismissed the complaint against defendant Reliance Studios, Inc. Defendants National and Triboro also appeal from so much of the same judgment as dismissed their cross complaint against defendant Dinger. Plaintiff appeals from so much of the same judgment, entered on the jury's verdict, as dismissed her complaint against defendant Reliance. Judgment insofar as it is in favor of plaintiff and against defendant Dinger, reversed upon the facts, action severed, and a new trial granted, with costs to abide the event, unless the plaintiff, within 20 days after entry of the order hereon, shall stipulate to reduce from $135,400 to $75,000 the amount of the verdict in her favor against said defendant; and, in such event, the judgment as so reduced and insofar as it is in favor of plaintiff and against said defendant, is affirmed, without costs. Judgment insofar as it is in favor of plaintiff and against defendants National and Triboro, reversed upon the law, without costs,

and complaint dismissed, without costs. As to said defendants, the findings of fact, except with respect to damages, are affirmed. If we did not reverse upon the law and dismiss the complaint, we would have reversed upon the facts and granted a new trial as to said defendants, unless plaintiff stipulated to reduce to $75,000 the verdict against them. Judgment insofar as it dismissed the complaint against defendant Reliance, and insofar as it dismissed the cross complaint of defendants National and Triboro against defendant Dinger, affirmed, without costs. Defendant Reliance contracted with defendants National and Triboro (both defendants being deemed one for purposes of this lawsuit and both being hereafter referred to as National) to replace a smokestack on the roof of the one-story building of Reliance; this building adjoining the rear of its two-story building. National subcontracted the work to defendant Dinger. An employee of Dinger hoisted himself from a ladder on the roof of Reliance's one-story building to the roof of Reliance's two-story building. He hoisted himself by means of a rope tied around the unsound chimney located at the juncture of both buildings. He thus caused the upper portion of the chimney to topple over and to crash through the roof of the one-story building, striking plaintiff's intestate and causing his death. National, as a general contractor, could be held liable only if there were a violation of section 241 of the Labor Law and of rule 23–3.8 of the N. Y. State Industrial Code. However, insofar as the rule was adopted pursuant to section 241, it was merely for the protection of "workmen in connection with * * * the work of constructing or demolishing" the smokestack (Labor Law, § 241), and this intestate was not within that class (*Vallina* v. *Wright & Kremers,* 7 A D 2d 101, and cases cited at p. 108). Even if the rule were applicable here, National did not violate it because the roof of the one-story structure was reasonably sufficient protection overhead for the work contemplated by the contract. In addition, the jury was justified in finding that it was Dinger's negligence in putting the chimney to an unintended and unusual usage which caused the death of intestate. For such negligence of Dinger, National could not be held liable (*Olsommer* v. *Walker & Sons,* 4 A D 424, affd. 4 N Y 2d 793). The reasoning which leads to the nonliability of National requires an affirmance of the judgment in favor of defendant Reliance. At the time of his death the intestate was 50 years of age. He left a widow, then aged 47; a married son, then aged 22; and a son, then aged 18. The intestate earned about $6,650 a year and had a life expectancy of 20.91 years. In our opinion, under all the circumstances, the award of $135,400 was excessive. Nolan, P. J., Beldock, Ughetta, Christ and Pette, JJ., concur.